REDACTED
VERSION

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |
|---|---|
| DYNCORP INTERNATIONAL LLC, | ) |
| Plaintiff, | ) ) ) **SUBMITTED WITH A MOTION FOR LEAVE TO FILE UNDER SEAL AND SUBJECT TO A PENDING MOTION FOR PROTECTIVE ORDER** |
| v. | ) |
| THE UNITED STATES, | ) Case No. _____ |
| Defendant. | ) ) Judge _____ |

## COMPLAINT

### I.    NATURE OF ACTION

1.      Plaintiff and incumbent contractor DynCorp International LLC ("DI"), by counsel, files this Complaint to enjoin and set-aside the award of a $10 billion follow-on contract, issued under Solicitation No. SAQMMA14R0319 ("Solicitation" or "RFP") to AAR Airlift Group, Inc. ("AAR") for flight operations, maintenance, and logistics support in connection with the Worldwide Aviation Support Services ("WASS") program for global law enforcement and counter-narcotic operations by the United States Department of State ("State"), Bureau for International Narcotics and Law enforcement Affairs, Office of Aviation ("INL/A"). The contract at issue is perhaps the largest single contract in State's history.  DI's incumbent contract has been extended to October 2017.

2.      State's award decision to AAR was fundamentally flawed, irrational, and contrary to the Solicitation's requirements, and but for these errors, DI would have been awarded the contract.  As alleged below, State committed a multitude of flagrant procurement violations in determining that DI was ineligible for award, thus avoiding any consideration of DI's █████ ██████████████████████  only other offeror in contention, AAR.  The award is also

tainted by AAR's access to highly confidential and proprietary DI information about its incumbent contract, which is the subject of an ongoing investigation by State's Inspector General ("IG"), and which compromised the integrity of this procurement.

3.     This procurement has had a troubled history.  In the first round of the procurement in January 2015, State excluded DI, the incumbent of over 20 years, from the competitive range, ██████████████████████████████. This set up a *de facto* sole source award of the contract to AAR, the only remaining offeror, without competition.  Remarkably, State eliminated DI from the competitive range without even asking DI a single question about its proposal.  After DI's protests at GAO, State promptly took corrective because its evaluation was obviously indefensible.  However, State's second round of the procurement has fared no better.

4.     State has again unreasonably ██████████████████████████████ ██████████████████████, applied unstated evaluation criteria, irrationally failed to credit DI with crucial strengths (including those associated with its sustained high levels of performance as the incumbent contractor on an extremely complex aviation program), arbitrarily exaggerated alleged weaknesses in DI's proposal, and ignored flaws in AAR's proposal that should have rendered it ineligible for award.

5.     The WASS program is a vast and complex undertaking that involves providing safe and efficient aviation support, strengthening law enforcement, and supporting counter-narcotics efforts on three continents.  State has significantly restructured the WASS program in the present competition.  Under the predecessor WASS contract, DI and its subcontractors performed all contract functions, and there were no associate contractors.  For the present

competition, however, State chose to divide the contract into three "pillars."  The primary pillar, the Aviation Services contract, is the subject of this Protest.  The other two pillars are the IT Services pillar and the Program Support Office pillar.  The Aviation Services Contractor's Solicitation requires that contractor to execute Associate Contractor Agreements ("ACAs") with the other two associate contractors, including the IT Associate Contractor, to allow for coordination and information-sharing among the contractors.

6.      As discussed below, State ██████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

7.      ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████.

8.      ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



9.

10.



11. ███████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████

12.    State also arbitrarily ███████████████████████

███████████████████████████████████████
████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████
███████████████████████████████████

████████ Because State failed to follow its own Solicitation, its evaluation was arbitrary and capricious.

████████████████████████████████████████

13.     State also engaged in widespread disparate treatment, permeating every aspect of the Solicitation's evaluation factors, including past performance.  For example, although DI and AAR both proposed a ████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ .

14.     Moreover, State failed to undertake any meaningful investigation of AAR's receipt of highly-confidential and proprietary DI information regarding DI's incumbent performance during the proposal preparation process—an obviously serious matter and one which is under open investigation by the State Department's Inspector General's Office.  State proceeded to award the contract to AAR notwithstanding that the IG investigation remains ongoing to this day and notwithstanding that DI's incumbent contract has been extended to October 2017.  In doing so, State failed to conduct an adequate review of these matters and also violated the FAR's requirements, which are designed to ensure that concerns about whether the integrity of a procurement has been compromised are adequately resolved prior to award.  State's arbitrary and unreasonable actions, which resulted in DI being improperly excluded from the competition a second time, have no place in a $10 billion procurement, and have again resulted

████████████████████████████████████████████████████████

in AAR, as the only other offeror, receiving the contract on a *de fa*cto sole source basis because State failed to conduct a cost/technical tradeoff that would have entailed consideration of DI's

████████████████████████

## II.    JURISDICTION

15.    The United States Court of Federal Claims has jurisdiction over this matter based upon 28 U.S.C. § 1491(b).

16.    DI is an interested party as it was an actual bidder and had a substantial chance of being awarded the contract.  DI and AAR submitted the only proposals that were considered for award by State, and DI would have won the contract had State not committed the errors described in this Complaint.

## III.    PARTIES

17.    Plaintiff DI is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the Commonwealth of Virginia and its principal office at 1700 Old Meadow Road, McLean, VA 22102.  DI's sole member is DynCorp International, Inc., a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the Commonwealth of Virginia and its principal office at 1700 Old Meadow Road, McLean, VA 22102.

18.    The Defendant is the United States, acting through the Department of State.

## IV.    FACTUAL BACKGROUND

### A.    The WASS Program

19.    Under the WASS program, DI provides a highly-trained, courageous, and professional team of more than ████████████ spanning ten countries, directly supporting

████████████████████████

the diplomatic and security interests of the United States and its allies around the world.  DI has successfully supported high risk and complex operations spanning the globe, including in the most unstable, harsh, and hostile environments.

20.     DI's commitment to the WASS program and other Department of State missions is unparalleled.  In June 2014, the Department of State installed a permanent Memorial Wall to honor personnel who lost their lives while supporting overseas criminal justice and counternarcotics programs.  Of the 87 personnel who were commemorated on the Memorial Wall, 70 were DI employees.  Eighteen of these employees were Killed-in-Action on the WASS program.

21.     While the WASS mission has changed significantly over the years as State combats the ever evolving narcotics trade, DI has consistently provided stellar air support to further national security interests for these counternarcotics efforts around the world, including in austere and dangerous environments in Afghanistan, Pakistan, Bolivia, Colombia, Guatemala, Iraq, Cyprus, Panama, and Peru.  Through these efforts, DI has destroyed nearly two million hectares of coca with both aerial and manual eradication efforts and captured the largest known stash of hashish in Afghanistan's history, thus preventing the sale of narcotics with a street value of more than $114 billion.

22.     State has significantly restructured the WASS program in the present competition, yet its evaluation shows that it did not understand the implications of that restructuring, contributing to its application of incorrect and unstated criteria to DI's proposal.  Whereas previously DI performed all work scopes, State has now split the program across three contracts: Aviation Support Services, Information Technology Services, and Program Support Office

Services.  The contract award at issue here is for one of these three contracts, the Aviation Support Services contract, which encompasses the following main elements: Management, Flight Operations, Logistics, and Maintenance.  The Aviation Support Services contract is by far the largest of the three contracts under the WASS program, with a ceiling value of $10 billion over the eleven-year term of the contract.

**B.**       **The WASS Solicitation and Evaluation Scheme**

23.       On July 18, 2014, the State issued the subject Solicitation for the WASS program, seeking proposals to provide aircraft operations, maintenance, and logistics services on three continents in support of State's counter-narcotics efforts.  The Solicitation called for a single-award indefinite-delivery, indefinite-quantity ("IDIQ") contract with a maximum value of $10 billion.

24.       Award was to be made on a best-value basis to an offeror deemed responsible in accordance with FAR Subpart 9.1.  The Solicitation provided that State was to conduct its evaluation using seven enumerated Factors and corresponding Subfactors:

| EVALUATION FACTORS | SUB-FACTOR A | SUB-FACTOR B | SUB-FACTOR C |
|---|---|---|---|
| **1:  Management and Administration (M.13.1)** | Management of program, projects and contracts | Management Information System | Program Safety Management System |
| **2:  Operations (M.13.2)** | Flight operations | Aircrew training and standardization | Flight Safety |
| **3:  Maintenance (M.13.3)** | Airworthiness compliance | Aircraft maintenance management | Aircraft engineering |
| **4:  Logistics (M.13.4)** | Aviation logistics management | Logistical support to Air Wing | Bill of Materials (BOM) |

| EVALUATION FACTORS | SUB-FACTOR A | SUB-FACTOR B | SUB-FACTOR C |
|---|---|---|---|
| **5: Small Business Plan** | N/A | N/A | N/A |
| **6: Past Performance (M.13.2)** | N/A | N/A | N/A |
| **7: Price (M.14)** | N/A | N/A | N/A |

Solicitation § M.12.

25.     The Solicitation lists the evaluation factors in descending order of importance, with Management and Administration receiving the greatest individual weight, followed by three equally-weighted technical factors (Operations, Maintenance, and Logistics), the Small Business Plan, Past Performance, and Price.  *See* Solicitation § M.12.1.  The non-price factors, when combined, were to be significantly more important than price.  *Id.*

**C.     State's First Evaluation Decision, DI's Initial GAO Protests, and State's Prompt Corrective Action**

26.     DI timely submitted a fully compliant proposal on October 2, 2014.  On January 28, 2015, DI received notice from State that its proposal was unsuccessful and would not be included in the competitive range.  After timely requesting a pre-award debriefing in accordance with FAR 15.505, DI received a pre-award debriefing letter from State on February 2, 2015.

27.     As set forth in the debriefing letter, ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████

28.     With the exclusion of DI from the competitive range, only AAR remained in the competition, thus making it the presumptive awardee.

████████████████████████████████████████████████████████ ████████████████

29.     On February 12, 2015, DI filed a Protest at GAO, which alleged that State's technical, past performance, and price evaluations of DI were flawed, that State disparately treated DI and AAR, and that State's exclusion of DI from the competitive range was improper and constituted a *de facto* sole source procurement in violation of the Competition in Contracting Act.

30.     DI filed a Supplemental Protest on March 16, 2015, alleging additional errors in State's technical, past performance, and price evaluations of both offerors, as well as several other procurement errors, including disparate treatment of the two offerors and a flawed competitive range determination.

31.     On March 18, 2015, State notified GAO of its intent to take corrective action in response to DI's Protests.  State advised that the scope of its corrective action would include "re-consideration of each Offeror's initial proposal (excluding AAR proposal revisions or responses to ENs) to include the approach to staffing, re-consideration and validation of assigned strengths, weaknesses and deficiencies, and re-consideration of past performance."  *See* March 18, 2015 Notice.

32.     State also advised that if it determined that discussions were required after taking these actions, it would make a new competitive range determination and then conduct discussions with the offerors included in the competitive range.  *See id.*

### D.    AAR's Improper Receipt of Highly-Confidential and Proprietary DI Information Regarding its Incumbent WASS Contract

33.     On April 27, 2015, DI received an unsolicited telephone call from a former AAR employee, who never worked for DI, who reported having specific knowledge that, at the

request of AAR, former DI employees now employed by AAR had provided AAR with
confidential and proprietary DI information regarding the incumbent WASS program.

34.     The former AAR employee described knowledge of improper efforts by AAR to
obtain and use this confidential and proprietary DI information—including salary, pricing and
other financial or technical data—in connection with the preparation of AAR's bid for the WASS
procurement.

35.     On May 4, 2015, DI reported this matter to the Contracting Officer and the State
Department Inspector General pursuant to the Procurement Integrity Act ("PIA").

36.     On May 5, 2015, the day after DI made its report to State regarding AAR's use of
DI's information, the Contracting Officer informed DI that AAR had disclosed "yesterday" that
it was in receipt of a highly confidential DI document known as a Profit Margin Analysis
("PMA").  The PMA contains ███████████████████████████████████████████
████████████████████████████████████████████████ provides confidential,
unique, and extremely valuable insight about DI's proposal for the re-compete contract.

37.     Among other things, the PMA shows a ███████████████████████
█████████████████████████████████████████████████████████████████████
███████████████████████████████████ It is undisputed that AAR
had access to the confidential PMA prior to submission of its final proposal for this Contract.

38.     DI subsequently learned additional information about AAR's access to
confidential and proprietary DI information.  For example, as part of a private litigation against
AAR arising out of these same events, which is ongoing, AAR provided a series of evasive and
internally inconsistent declarations about AAR's receipt of and access to DI's PMA document.

███████████████████████████████████████████████████████████████

39.     On April 21, 2016, DI sent a letter to the Contracting Officer that highlighted these inconsistencies and explained how the PMA could be used by AAR to gain a competitive advantage during discussions and with the submissions of its Final Proposal Revision. Specifically, DI explained that the PMA contains ██████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ April 21, 2016 Letter to CO at 1.  DI, thus, underscored the importance of the Contracting Officer's obligation to conduct a fulsome review and ensure that the procurement is not tainted by even the appearance of impropriety. *See id.* at 2-3.

40.     The Contracting Officer responded to DI on April 22, 2016.  In that letter, the Contracting Officer noted that review by State's Office of the Inspector General was ongoing, but declined to provide any additional information to DI about the scope or status of his review of these matters.

41.     DI subsequently met with representatives of State's Office of the Inspector General on May 2, 2016 to demonstrate how the PMA could be used by a competitor, such as AAR, to gain an unfair and improper competitive advantage over DI.  The IG's investigation remains ongoing to this day.

E.     **Discussions and Final Proposal Revision**

42.     After State took corrective action in response to DI's GAO Protest, it reinstated DI into the competitive range and conducted discussions with DI.  During those discussions, DI timely responded to a ████████████████████, which were received ████████████ from State.  DI submitted its first proposal revision on November 16, 2015, following ████

████████████████████████████████████████████████

██████████████████████ DI then submitted another proposal revision responding to the

██████████████████████ on March 7, 2016.  Having addressed all of the concerns that State

raised during discussions, DI timely submitted its Final Proposal Revision on May 4, 2016.

    **F.**    <u>**State's Second Notice of Unsuccessful Offer to DI and Debriefing**</u>

    43.    On September 1, 2016, DI received a notice from State that its offer was

unsuccessful.  DI requested and received a debriefing that same day, which was issued in the

form of a 62-page written debriefing memorandum.  The debriefing showed that DI had been

assigned the following ratings for the four technical Factors:

| Factor | Pre-Discussion Rating (10/02/2014 Proposal) | In-Discussion Rating (11/16/2015 Proposal) | Post-Discussion Rating (03/07/2016 Proposal) |
|---|---|---|---|
| Factor 1 | | | |
| Sub-Factor 1-a | | | |
| Sub-Factor 1-b | | | |
| Sub-Factor 1-c | | | |
| Factor 2 | | | |
| Sub-Factor 2-a | | | |
| Sub-Factor 2-b | | | |
| Sub-Factor 2-c | | | |
| Factor 3 | | | |
| Sub-Factor 3-a | | | |
| Sub-Factor 3-b | | | |
| Sub-Factor 3-c | | | |
| Factor 4 | | | |
| Sub-Factor 4-a | | | |
| Sub-Factor 4-b | | | |
| Sub-Factor 4-c | | | |

Debrief at 3.

    44.    As depicted above, DI ultimately was rated ████████████████████

████████████████████

    45.    The debriefing letter further showed how these ratings compared to AAR's:

████████████████████████████████████████████

Final Consensus Technical Evaluation Ratings:

| Offeror | Factor 1 Management | Factor 2 Operations | Factor 3 Maintenance | Factor 4 Logistics | Overall Proposal Rating |
|---|---|---|---|---|---|
| AAR | Superior | Superior | Acceptable | Superior | Superior |
| DynCorp | ██████████████████████████████████████ | | | | |

Debrief at 61.

46.     According to the debriefing, DI received a rating of ███████████████ for the Past Performance Factor.

47.     The debriefing advised that DI's Total Evaluated Price was ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

48.     ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████

**G.     State's Disparate Evaluation of the Offerors'** ███████████

49.     ████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ ██  ████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████████

15













**H.** **AAR's Deficient ▮▮▮ Approach**



██   ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██   ███████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████

I.      **Other Examples of State's Disparate Treatment of DI and AAR**

77.     State engaged in a pervasive pattern of disparate treatment of DI's and AAR's highly-comparable solutions across all of the Solicitation's technical factors and subfactors, as well as with regard to the Past Performance factor, discussed separately below. ██████████

████████████████████████████████████████████

██████████████████████████████████████

78.     ███████████████████████████████████

████████████████████████████████████████████

a. 

c.



80.

■ ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

**J.**     **State's Inadequate Past Performance Evaluation**

82.     DI has received consistently positive reviews for its performance on the incumbent Contract. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

83.     As a direct result of the exemplary work of DI, INL/A won the GSA Federal Aviation Award (Large Category) four times, including in 2015, the most recent year in which the award was given.  This prestigious award is presented annually to the agency with the best overall aviation performance record. An independent panel of aviation experts evaluates the program's aircraft administration, operations, maintenance, training, and safety.  The winning program is the one that is determined to be "the safest and most efficient and effective, in all aspects of a flight program."  When INL/A received its most recent award, the Deputy Director of INL/A's Office of Aviation congratulated DI for this "noteworthy achievement," which he

████████████████████████████████████████████

said was "due in large part to the hard work and professionalism of the DynCorp staff, in partnership with their INL/A counterparts."



██████████████████████████████████████████
██████████████████████████

87.     In contrast to DI's exemplary record, AAR has had a poor performance record, particularly in the critical realm of safety.  AAR experienced a crash in which there were three fatalities in 2012, and experienced another crash with three fatalities in September 2016, shortly after award of this contract.  These recent crashes are consistent with a troubling pattern of safety problems, including two fatal crashes in 2009 by AAR's predecessor, Presidential Airways.  One of these crashes occurred in Iraq—one of the same locations as the current contract.

88.     ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
██████████████████████

89.     ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

**K.      State's Inadequate Evaluation of** ██████████████████████
██████████

90.     In addition to its troubled performance history, AAR has never performed a contract of the size, scope and complexity of the WASS program.  ████████████████

████████████████████████████████████████████
████████████████████████████████████████████



██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

94.     ████████████████████████████████████████

██████████████████████████████████

**L.       State's Inadequate Evaluation of** ███████████████
████████████

███   █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

███   █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████

███   █████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

31



███   ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

█████████████

███   ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

**M.**   ████████████████

104.    DI timely filed a protest at GAO within five days of State's debriefing in order to obtain an automatic stay of contract performance.  Accordingly, pursuant to 4 C.F.R. § 21.6 and 31 U.S.C. § 3553(d) (2010), State suspended all contract transition and performance.  State did not seek to override the stay.  This is because, even before the award to AAR, State issued DI an extension on its incumbent contract until October 31, 2017, to ensure continuity of services during the recompete process.  DI continues to perform the WASS contract without interruption to this day.

105.    ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████
██████████████████████████████████ .

## V.    COUNTS

### COUNT I

**There Was No Rational Basis for State's Evaluation ██████████████ , Which Was Based on an Unstated Evaluation Criterion and Reflected Disparate Treatment**

106.    DI hereby incorporates by reference paragraphs 1-105 above.

107.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ ; ████████████████████████████

██████████████████████████████ This was arbitrary and capricious, as well as

improper under the Competition in Contracting Act.

108.    ██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

109.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████



112.    In sum, it was arbitrary and capricious for State to ███████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. But for the foregoing errors, DI would have been

awarded the WASS Contract.

## COUNT II

**AAR's Proposal** ███████████ **|** ████████████████ **and Thus Should Have Been
Deemed Ineligible for Award**

113.    DI hereby incorporates by reference paragraphs 1-112 above.

███████████████████████████████████████████████████████



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

118.    Thus, because AAR did not ████████████████████████ it was
arbitrary and capricious for State to not exclude AAR from the competition.  But for the
foregoing errors, DI would have had won the WASS Contract.

## COUNT III

**State Failed to** ██████████████████████████████████

119.    DI hereby incorporates by reference paragraphs 1-118 above.

120.    An assessment of an offeror's performance risk is an inherent part of every best-
value procurement.  ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████  There is no rational
basis for State's failure to consider the ████████████████████████.  Had
State considered ██████, it would have ████████████████████████
██████████████████████████████████████

██    ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

██    ████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████



As such, State's ratings of AAR were arbitrary and capricious and plainly prejudicial to DI.

## COUNT IV

### State's Award to AAR Was Improper Because AAR's Violation of the Procurement Integrity Act Made AAR Ineligible for Award

124.    DI hereby incorporates by reference paragraphs 1-123 above.

125.    AAR reportedly engaged in a campaign to improperly solicit and use confidential and proprietary DI information, including bid and proposal information, to compete for the WASS contract—in violation of the Procurement Integrity Act, 41 U.S.C. §§ 2101-2107. Indeed, on two occasions, AAR received highly confidential and proprietary DI information regarding its performance on the incumbent WASS contract prior to the submission of final proposals.  This proprietary information included salary, pricing and other financial or technical data, including DI's highly-sensitive PMA document, which contains thousands of lines of detailed financial data relating to DI's operating costs and approach on the incumbent contract.

126.     AAR not only obtained DI's confidential and proprietary bid or proposal information, but AAR's proposal in response to the Solicitation also likely relied upon that information. This is a clear violation of the PIA, which prohibits any person from "knowingly obtain[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(b).  "Contractor bid or proposal information" is defined to include certain non-public information submitted to a Federal agency as part of, or in connection with, a proposal to enter into a Federal agency procurement contract.  *See* 41 U.S.C. § 2101(2).  This includes cost or pricing data, indirect costs and direct labor rates, and certain designated proprietary contractor information.  *Id.*  "Source Selection Information" is defined to include, among other things, proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices.  *See* 41 U.S.C. § 2101(7).

127.     Any person who violates the PIA is subject to a wide range of criminal, civil, and administrative remedies, including exclusion from the procurement.  *See generally* 41 U.S.C. § 2105.  With regard to the procurement to which the violations relate, these remedies include rescinding the contract, disqualifying the offeror, and referring the matter for suspension and debarment proceedings.  *See* 41 U.S.C. § 2105(c); FAR 3.104-7.  Further, given the nature of the violations, the PIA presumes that violations will negatively affect the present responsibility of a contractor and can lead to suspension and debarment proceedings.  *See* 41 U.S.C. § 2105(c)(3). Offeror disqualification is a necessary sanction for violating federal statutes that impact the integrity of the procurement system.

128.     AAR's violation of the PIA renders any award to AAR arbitrary and capricious and contrary to law and regulation, and thus, requires the disqualification of AAR from the competition.

## COUNT V

### State's Award to AAR Was Improper Because AAR's Conduct Gave It an Unfair Competitive Advantage

129.     DI hereby incorporates by reference paragraphs 1-128 above.

130.     Apart from its PIA violation, award to AAR was arbitrary, capricious, and contrary to law and regulation because AAR gained an unfair competitive advantage when it obtained and likely used DI's confidential and proprietary information in preparing its proposal. The information that AAR sought and obtained from former DI employees was non-public, competitively-useful data about DI's incumbent contract.

131.     Contracting agencies are required to avoid even the appearance of impropriety in government procurements.  *See* FAR 3.101.  Thus, a contracting officer must protect the integrity of the procurement system by disqualifying an offeror from the competition where the firm may have obtained an unfair competitive advantage, even if no actual impropriety can be shown.  *See, e.g.*, *NKF Eng'g v. United States*, 805 F.2d 372, 376-77 (Fed. Cir. 1986).  The mere appearance of impropriety is sufficient and appropriate grounds for disqualification to protect the integrity of the procurement and the public trust.

132.     Given that AAR reportedly had access to and used DI confidential information about its performance on its incumbent contract—information that gave AAR a critical advantage in this procurement—AAR could not validly be awarded the Contract, and should

have been eliminated from the competition.  State's award to AAR was therefore arbitrary and capricious.

## COUNT VI

**State's Award to AAR Was Improper Because State Failed to Meet the Requirements of FAR 3.104-7 for Ensuring that the Possible PIA Violation Did Not Have Any Impact on the Procurement**

133.   DI hereby incorporates by reference paragraphs 1-132 above.

134.   The FAR requires that contracting officers who receive information about a "violation or possible violation" in the procurement must "determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor." FAR 3.104-7(a) (emphasis added). █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

135.   ██████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████████████

136. 

137.     The allegations of AAR's misconduct are specific, identifying at least three members of AAR's senior leadership team as spearheading the effort to obtain DI's information and identified at least five former DI employees from whom AAR allegedly attempted to obtain and/or successfully obtained such information, and several internal AAR meetings at which these efforts and the DI information they produced were discussed.  Thus, due to the widespread and orchestrated campaign at the highest levels of AAR to obtain and use DI information, it was imperative for the Contracting Officer to understand the full scope of AAR's internal review, including the facts it relied upon in reaching its conclusions, in order to determine whether AAR's own review was reasonable and credible.

138.

██████████████████████████████████████████████████████████

████████████████████████████████████

139.    However, the IG's mandate is to determine whether a crime has been committed

and the IG, therefore, utilizes the "beyond a reasonable doubt" standard as the basis for its

findings.  The Contracting Officer's mandate is much different:  he is charged with determining

whether the integrity of the procurement has been compromised by even the appearance of

impropriety—a much lower standard. ████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

140.    ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ Therefore, award to AAR was arbitrary,

capricious, and contrary to law and regulation.

## COUNT VII

### It Was Arbitrary and Capricious for State to Award AAR the Contract while the IG's Investigation of AAR's Access to and Potential Use of DI's Information Was Still Ongoing

141.    DI hereby incorporates by reference paragraphs 1-140 above.

142.    State awarded AAR the contract in September 2016, despite the fact that State's

IG is conducting an active and ongoing investigation into AAR's receipt of, and potential use of,

███████████████████████████████████████████████████████

DI's confidential and proprietary information, and despite the fact that DI's incumbent contract

was previously extended until October 2017—more than a year after the award date.

143.


144.    DI sent the Contracting Officer a letter on April 21, 2016, detailing the

significance of the DI information that AAR obtained, as well as several inconsistencies and

evasive responses in AAR declarations that were submitted as part of a separate litigation matter

between DI and AAR regarding these same matters. ███████████████████████

███████████████████

145.    DI also made a presentation to the IG on May 2, 2016, in which it explained how

AAR could use the confidential and proprietary DI information contained in the PMA Excel file

that AAR indisputably had access to prior to submitting its final proposal.  Although DI

explained at length how one could examine AAR's proposal to assess whether it had used DI's

information, the Contracting Officer chose not to await the results of the IG's investigation or███

████████████████████████

146.    The WASS program is one of the largest procurements in State's history, with a

value of up to $10 billion.  Serious and credible issues have been raised about AAR's conduct

and whether the integrity of this procurement has been compromised.  It was arbitrary and

███████████████████████████████

capricious for State to not await the IG's findings before making an award to AAR when these issues remain under active and current investigation by the IG, and the decision to proceed with the award was made after DI's incumbent contract was extended to October 2017, and thus, there was more than a year left on DI's contract performance period.  In the face of this timeline, State has provided no credible reason why it could not wait for the IG to complete its review before making award.  █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

147.    █████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████

148.    State's decision to proceed with the award to AAR while there was still over one year remaining on DI's most recent extension of its incumbent contract—despite the IG's ongoing investigation and █████████████████████████████████████████—was arbitrary and capricious because it failed to ensure that the procurement was not tainted by AAR's access to and likely use of DI's information.

████████████████████████████████████████████████████████████

## COUNT VIII

### State Underrated DI's Proposal, While Overrating AAR's Proposal under Every Technical Factor, Thus Engaging in Disparate Treatment

149.    DI hereby incorporates by reference paragraphs 1-148 above.

150.    An evaluation must be rational and consistent with the terms of the solicitation and regulations. State's evaluation of DI's technical proposal relative to AAR's proposal was neither rational nor consistent with the terms of the Solicitation.  In fact, its final evaluation of DI's technical proposal and the adjectival ratings that it assigned were entirely arbitrary and capricious.

151.    State engaged in a pervasive pattern of disparate treatment of DI's and AAR's highly-comparable solutions across all of the Solicitation's technical factors and subfactors. ■

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████

152.    But for State's disparate treatment of DI and AAR, DI would have won the WASS Contract.  Therefore, State's evaluation and award decision were arbitrary and capricious.

## COUNT IX

████████████████████████████████████████████

153.    DI hereby incorporates by reference paragraphs 1-152 above.

154.    ██████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

 Therefore, State's evaluation of Past Performance was arbitrary and capricious and prejudicial to DI.

## COUNT X

### State's Responsibility Determination Was Improper

157.    DI hereby incorporates by reference paragraphs 1-156 above.

158.    An affirmative responsibility determination is a condition precedent to the award of a federal government contract.  The FAR provides that "[n]o purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility."  FAR

9.103(b).  Further, "[i]n the absence of information clearly indicating that the prospective

contractor is responsible, the contracting officer shall make a determination of

nonresponsibility."  *Id.*  Responsibility determinations must be documented and included in the

contract file.  *See* FAR 9.105-2(b).

159.     Before making an affirmative responsibility determination, the contracting officer

"shall possess or obtain information sufficient to be satisfied that a prospective contractor

currently meets the applicable standards in [FAR] 9.104."  FAR 9.105-1.  Among other things,

these standards require a prospective contractor to have a satisfactory performance record and

have a satisfactory record of integrity and business ethics.  *See* FAR 9.104-1(c), (d).

160.     An agency's affirmative responsibility determination is subject to review where a

contracting officer unreasonably failed to consider available relevant information or otherwise

violated a statute or regulation.  Here, State's affirmative responsibility determination for AAR

was unreasonable for at least two reasons.

161.     First, the Agency unreasonably disregarded key facts about AAR's record of

integrity and business ethics:  specifically, AAR's campaign to improperly solicit and use

confidential and proprietary DI information.  Second, the Agency failed to consider AAR's

demonstrated history of air safety problems—including several fatal air crashes—that were

squarely before the Agency.

162.     The Agency should have considered the adequacy of AAR's performance and

safety record in making its responsibility determination, but did not.  Had the Agency properly

considered these issues as part of its responsibility determination, it would have found AAR

nonresponsible and ineligible for award.

163.     First, AAR's sustained campaign to obtain and use critical DI bid and proposal information that provided AAR an unfair competitive advantage in this procurement is precisely the type of misconduct that strikes at the core of an offeror's business integrity.  State's failure to adequately review AAR's conduct in this regard precludes an affirmative responsibility determination, and renders the award improper.  State is well aware of the issues presented by AAR's access to and use of highly confidential DI pricing information.  State knows that AAR obtained and maintained highly confidential and proprietary DI financial information, and knows that a whistleblower and former AAR employee reported on calculated efforts by members of AAR's senior management to improperly obtain DI confidential information for competitive purposes.

164.     Despite State's awareness of these serious issues, there is no evidence State properly examined their impact on AAR's present responsibility.  This violated FAR requirements that an agency consider a contractor's record of business ethics and integrity before making an award.  *See* FAR 9.10401(d).  Accordingly, State's affirmative responsibility determination cannot stand.

165.     State's improper responsibility determination is also shown by its failure to properly evaluate AAR's demonstrated history of air safety problems and fatal air crashes.  Had State properly considered AAR's poor air safety record, it would have found AAR non-responsible and ineligible for award.

166.     As with AAR's misconduct relating to DI's confidential and proprietary information, State was well-aware of AAR's poor performance record when it made its award.

████████████████████████████████████████████

███████████████████

██    ████████████████████████████████████

████████████████    The FAR required AAR to demonstrate a satisfactory performance

record as a condition of award, and also required the Contracting Officer to have information

sufficient to be satisfied that AAR had a satisfactory performance record. See FAR 9.104-1(c),

9.105-1.  Neither condition was met here.  Therefore, State did not have an adequate basis for its

affirmative responsibility determination and its decision was arbitrary, capricious, and contrary

to law and regulation.

**COUNT XI**

**State Failed to Properly Assess** ████████████████████████

████████████

168.    DI hereby incorporates by reference paragraphs 1-167 above.

169.    State's price evaluation of AAR was flawed because State failed to properly

assess ██████████████████████████████████

██████████████████████████████████████

████████████

██    ████████████████████████████████

██████████████████████████████████████

██    ████████████████████████████████

████████████████████████████████████████

██████████████████████████████

████████████████████████████████████



## **PRAYER FOR RELIEF**

DI respectfully requests the following relief:

      (A)     That the Court sustain each and every ground of this Protest;

      (B)     That the Court enjoin and set-aside State's award to AAR;

      (C)     That the Court direct State to award the contract to DI;

      (D)     In the alternative, that the Court direct State to terminate the contract with AAR, conduct discussions with DI and AAR, request best and final offers, and award the contract to the offeror that represents the best value to the Government in accordance with the Solicitation's evaluation criteria and applicable law; and,

      (E)     That the Court order such other and further relief as may be deemed just and proper.


Dated:  December 28, 2016         By:   /s/ David M. Nadler

                          David M. Nadler
                          BLANK ROME LLP
                          1825 Eye Street, NW
                          Washington, DC   20006-5403
                          Telephone: (202) 420-2281
                          Facsimile: (202) 420-2201
                          DNadler@BlankRome.com

                          *Counsel for DynCorp International LLC*

Of Counsel:
Adam Proujansky
David Y. Yang
Stephanie M. Zechmann
Philip E. Beshara
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC   20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2016, a true and correct copy of the foregoing

Complaint was delivered via electronic service to the addressee below in accordance with Rule 4

and Appendix C of the Rules of the United States Court of Federal Claims:

> Douglas V. Edelschick, Esq.
> Trial Attorney
> United States Department of Justice, Civil Division
> Commercial Litigation Branch
> PO Box 480
> Ben Franklin Station
> Washington, DC  20044
> Telephone:  (202) 353-7578
> Facsimile: (202) 307-0972
> Email: douglas.edelschick@usdoj.gov

> _/s/ Philip E. Beshara_____
> Philip E. Beshara

December 28, 2016